## Wabash Railroad Company v. E. D. Smith.

1. WAGES—*when contract of service does not prohibit assignment of.* A contract of service does not prohibit an assignment of wages so as to render the same null and void where the provision with respect thereto is that assignments when made are ground for immediate dismissal, and this especially in view of the fact that the employer had in some instances recognized assignments.

2. WAGES—*when assignment of, effective.* An assignment or wages earned during a particular period is effective to pass title thereto regardless of whether the rate of payment is increased or lessened during the period referred to in the assignment.

3. WAGES—*effect of authority to collect, contained in assignment.* An assignment of wages which contains an authority to the assignor to collect on behalf of the assignee, does not preclude such assignor from asserting his right to collect upon his own behalf.

Assumpsit. Appeal from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

HUGH CREA and H. W. HOUSUM, for appellant; C. N. TRAVOUS, of counsel.

LEFORGEE & VAIL, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

E. D. Smith, for the use of John L. Bennett, brought suit in the Circuit Court of Macon county against the Wabash Railroad Company to recover wages due from said railroad company to Smith and by Smith assigned to Bennett. The case was tried before the court with-

out a jury, a judgment rendered in favor of Smith for Bennett's use against the railroad company in the sum of $108.85, and the railroad company appealed.

The case was tried upon a stipulation of facts which is too long to be incorporated in an opinion, but which showed the facts to be in substance as follows: On April 17, 1904, Smith, who was an engineer in the employ of appellant, being indebted to Bennett, gave him his note for $105, with interest at seven per cent. due in ninety days from said date, and on October 17, 1904, gave his renewal note extending payment to January 17, 1905. Smith also executed and delivered to Bennett three blank instruments in which said instruments said Bennett afterward filled the blanks, whereupon said three instruments with the blanks filled in substance amounted to an assignment to Bennett of the salary or wages due or about to become due to said Smith as engineer from appellant, as per verbal contract commencing April 27, 1904, at $4.25 per hundred miles, which assignment authorized Bennett to collect, receive and receipt for all salary and proceeds arising from said contract and directing said railroad company to pay the same to Bennett. Said instruments also provided that Smith, in consideration of Bennett's having bought his salary and wages from said appellant, should collect said wages when due, as the agent of Bennett and for his sole use and benefit and deliver the whole thereof to Bennett; Bennett was to have the right, however, to file the written assignment with appellant and collect the same himself, if he, at any time, saw fit to do so. As a part of the said instruments there was an affidavit made by Smith to the effect that Smith had actually earned at that time $105 as such salary, and that no payment had been made to him, or any part previously assigned; that he had made the assignment to Bennett for the express purpose of borrowing money and had given him assignments in blank, with full authority to him to fill out and present to appellant and enforce the same

if he (Smith) failed to comply with said agreement. On January 28, 1905, such assignment was filed with appellant company, and on January 31, 1905, said Smith, having quit the service of appellant, or been discharged therefrom, on January 26, 1905, called for his wages due at division headquarters and was informed there that the assignment to Bennett had been filed and payment was refused him. Upon such refusal and upon the same day Smith wrote a letter to the general counsel of appellant asking that a check for $120.91, covering his wages for the month of January, be sent to Bennett at an early date stating that he was no longer in the service of the company and desired a settlement.

From such stipulation it further appeared that there was no express contract as to the wages Smith should draw during his employment other than a rate upon each one hundred miles, varying from time to time at the option of the appellant; that there was no salary due to Smith prior to January 1, 1905; that appellant had no notice that Smith was indebted to Bennett prior to the filing of the notice of assignment on January 28, 1905; that from January 1st to January 26th, Smith earned, while in the employ of appellant, the sum of $125 (part of it at $3.50 per one hundred miles, part at $3.65 per one hundred miles and the balance at $4.25 per one hundred miles); that prior to the service upon appellant of the assignment of January 28th, appellant had accepted and agreed to pay and deduct from the wages of Smith, the sum of $6 upon Smith's order in favor of Wm. Gause & Bro., and that Smith had earned the sum of $125 in January, before the twenty-eighth of that month, and that appellant owed him the balance of the $125 after deducting the $6 item above referred to and an assessment of fifty cents due the Wabash Hospital Association.

It also appeared from such stipulation of facts that appellant paid Smith the balance due him, on the fourth day of February, 1905, without the knowledge

or consent of Bennett and that no part of the debt from Smith to Bennett had been paid; that at the time that Smith entered the employment of appellant he signed a paper in the words, to wit: "I understand that the assignment of wages due from Wabash Railroad Company is strictly prohibited and subjects any employe executing such assignment to immediate dismissal from the service of the company and I hereby accept service with said company subject to said conditions."

It further appeared from the stipulation that the letter from Smith dated January 31, 1905, written to the general counsel of appellant requesting payment of the amount due, to be made to Bennett, was not received by such officer until after a check for Smith's wages had been mailed to the superintendent of appellant at Decatur, which was the usual way of paying discharged employes on that division of appellant's road, and that the official of appellant at Decatur, upon whom legal notices were served, was one Lewis, agent at Decatur, who had nothing to do with the employment or discharge of employes, or with the payment of employes who quit or were discharged from the service of appellant.

Appellant first contends that the attempted assignment of wages by Smith was void because of the statement signed by him, in which he acknowledged that assignment was prohibited by the terms of his employment, and great reliance is placed upon the case of Mueller v. Northwestern University, 195 Ill. 236-249, in support of that contention. The contract in the case just referred to provided in express terms that the contractor should not sell or assign his contract or any part thereof, or interest therein, without the consent in writing of the architects and that any assignment without such consent should be absolutely null and void.

In the case at bar there was no provision in the contract that an assignment by the employe should be

null and void as in the Mueller case, but there was the provision that assignments were prohibited and, if made, were ground for immediate dismissal from the company's service. This difference alone might not determine us in holding that the employment contract, by its terms, permitted an assignment; but we are constrained to hold that as the meaning of such employment contract, upon this phase of the case, is doubtful, it is proper to ascertain what construction the parties themselves by their conduct have placed upon it. Mueller v. Northwestern, *Idem*. From the stipulation of facts it appears that prior to the service of the assignment upon appellant on January 28, 1905, it had accepted and agreed to pay and deduct from the wages of Smith, the sum of $6, upon an order given by him in favor of Gause & Bro., and that such sum was deducted from the $125 earned by Smith in the month of January. It also appears that after Bennett had filed his assignment with the appellant company and on January 31, 1905, when Smith called at division headquarters for his wages, payment thereof was refused and he was informed that the assignment to Bennett had been filed and payment refused (presumably upon that account). Such conduct upon the part of appellant tended strongly to show that appellant understood and construed the contract to mean, not that an assignment was absolutely null and void, but that such an act would afford the railroad company ground for dismissing Smith at any time, without giving any excuse therefor other than the making of the assignment. The trial court was therefore not in error in holding that while assignments of wages were prohibited by appellant, yet it, appellant, recognized and acted upon them when made, reserving to itself the right summarily to dismiss from its service employes who made such assignments.

Appellant next contends that the alleged assignment is insufficient because it purports to assign wages at the rate of $4.25 per 100 miles, when the wages earned

by Smith in January, 1905, were at another or different rate or rates per 100 miles; that such an instrument should be strictly construed and cites the case of Wabash Railroad Co. v. Papin, 119 Ill. App. 99, in support of that contention.

We do not regard the Papin case as at all conclusive upon the contention made by appellant in this case. The court in that case held that the assignee was bound by the statement in the assignment transferring him the salary of Papin for the month ending on March 31, 1904. There was an express limitation, as to the time when the salary should have been earned by the terms of the assignment. In the case at bar the rate of $4.25 per 100 miles was the rate which, in fact, Smith was earning when he made the assignment. When all three of the papers executed by Smith are considered together, as they should be properly (Wabash R. R. Co. v. Papin, *supra*), it would seem that the assignment was for Smith's salary or wages which at that time were $4.25 per 100 miles *without any limitation* or suggestion to the effect that such wages might not be increased or lessened from time to time thereafter. The wages were to be those to be earned *after* April 27, 1904, and without regard to any exclusive rate.

Appellant also contends that by the terms of the three instruments executed to Bennett by Smith, that Smith agreed to collect his wages when due from appellant as the agent of Bennett and turn them over to him and that such power to collect authorized Smith to receive and receipt for the money in spite of Bennett's rights and in defeat thereof.

This is a strained construction of the contract and one that we cannot approve. In the instrument alluded to and in which the authority is given to Smith to collect such wages as the agent of Bennett, it was expressly agreed that the authority given to Smith to collect should not divest Bennett of the right to file the written assignment with appellant before or after the wages became due, at any time he should see fit.

In pursuance of the right so given to Bennett he filed his assignment with appellant while the wages of Smith to an amount in excess of his (Bennett's) claim were still in the hands of appellant unpaid to Smith. When Smith called at division headquarters he was notified that the assignment to Bennett had been filed and payment refused. Payment thereafter made by appellant to Smith would be made at the peril of appellant, so far as it tended to impair the rights of Bennett.

It is unnecessary to discuss any of the contentions made by appellant other than those already stated. The judgment of the trial court was right upon the facts as stipulated and is affirmed.

*Affirmed.*